# In the United States Court of Federal Claims

No. 12-920C
(Filed: February 27, 2014)

| | |
|---|---|
| STEPHANIE MERCIER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | 38 U.S.C. § 7453; Motion to dismiss for lack of subject matter jurisdiction; RCFC 12(b)(1); Motion to dismiss for failure to state a claim upon which relief can be granted; RCFC 12(b)(6); overtime pay; "officially ordered or approved"; <u>Doe v. United States</u> |

*David M. Cook*, Cook & Logothetis, LLC, Cincinnati, OH, for plaintiffs.

*Michael Paul Goodman*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

**KAPLAN, Judge.**

This case is before the Court on the government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). The plaintiffs in this action are two individuals and a putative class of registered nurses who are currently or were formerly employed by the Department of Veterans Affairs ("VA"). They contend that they were denied basic and overtime pay as well as compensatory time off to which they are entitled under 38 U.S.C. § 7453, as well as VA regulations and policies. They seek backpay with interest, pursuant to the Back Pay Act, 5 U.S.C. § 5596(b), as well as attorney fees and costs.

The government argues that the Court lacks jurisdiction over Counts II, V and VI of the complaint and that Counts I, III, and IV fail to state claims on which relief may be granted. For the reasons set forth below, the government's motion to dismiss is granted.

**BACKGROUND**

Congress created what is now the Veterans Health Administration in 1946 to "to provide a complete medical and hospital service for the medical care and treatment of veterans" who were then returning home after World War II.  38 U.S.C. § 7301(b).  See Athey v. United States, 78 Fed. Cl. 157, 158-59 (2007); Curry v. United States, 66 Fed. Cl. 593, 595 (2005).  To staff this new service with medical professionals, Congress established a personnel system that gives the Secretary of Veterans Affairs authority over hiring and other personnel-related matters, and that is largely independent of title 5 of the United States Code, which generally governs the federal civil service.  See 38 U.S.C. §§ 7401–7474.

The plaintiffs in this case are two nurse practitioners who work for the VA, along with a putative class of registered nurses who are currently or were formerly VA employees covered by the title 38 system.  They allege that during all relevant times, up to and including the present, they have been required to work additional hours in excess of the thresholds established for triggering entitlement to overtime pay in 38 U.S.C. § 7453,[1] in order to "perform[] patient care clinical duties and professional responsibilities known as View Alerts using VA, non-VA, or personal home computers or laptops."  Compl. at ¶ 14.[2]

Plaintiffs further allege that nurse supervisors and other VA personnel with the authority to order or approve overtime work and pay had knowledge that, in order to complete View Alerts as required, the individual plaintiffs and class members worked overtime hours on a "recurring and involuntary basis" and that VA supervisors and other personnel "expected, required, and induced plaintiffs and other class members to work those additional hours performing View Alerts."  Id. at ¶ 17.  They claim that nurses who do not perform overtime work "to complete a

---

[1] In accordance with 38 U.S.C. § 7453(e)(1), "[a] nurse performing officially ordered or approved hours of service in excess of 40 hours in an administrative workweek, or in excess of eight consecutive hours, shall receive overtime pay for each hour of such additional service.  The overtime rates shall be one and one-half times such nurse's hourly rate of basic pay."

[2] According to the Complaint:

> View Alerts are electronic, written, patient-related, and time-sensitive requests for information or follow up that are sent directly to nurses through their individually VA assigned accounts to complete.  View alerts may be sent from physicians, other providers, pharmacies, laboratories, patients, and other individuals and locations from within as well as outside the VA system.  View Alerts may be sent at any time and at any hour of the day or night.  View Alerts are continuously sent to nurses to complete with no limit as to how many View Alerts each nurse may receive or be asked to perform.  View Alerts that are not completed within two (2) weeks are automatically removed from a nurse's account.  Under their professional responsibilities as patient advocates, nurses have an obligation to complete all View Alerts.

Compl. at ¶ 15.

sufficient volume of View Alerts, as subjectively deemed by VA management, are subject to intensified scrutiny, management intervention, and disciplinary action for poor time management." Id. at ¶ 18.  Moreover, according to the Complaint, VA management has never offered to reduce either the volume of View Alerts or the workload in other areas of their responsibilities to enable the plaintiffs "to have a workload that realistically reflects their actual work requirement and can be completed within a regularly scheduled shift." Id. at ¶ 19.  To the contrary, plaintiffs allege, the VA has increased their workloads by "continually expanding the size of the panel of patients to which each nurse is assigned or for which each nurse is effectively responsible." Id. at ¶ 20.  Finally, plaintiffs allege that their requests for overtime pay or compensatory time off for overtime hours worked have been granted on some occasions, but denied in others, and that they have made numerous unsuccessful attempts to correct VA's practice of failing to pay them for overtime hours worked. Id. at ¶¶ 21-24.

In Count I of their complaint, the plaintiffs allege that the VA's knowledge of the fact that they have worked overtime hours on a recurring and involuntary basis, and its "expectation, requirement, and inducement to work those additional hours constitute [the VA's] order or approval for the additional hours worked." Id. at ¶ 40.  They further allege that VA's failure to compensate the plaintiffs for the overtime hours they have worked violates the overtime pay provisions set forth at 38 U.S.C. § 7453.[3]  Compl. at ¶¶ 41-42.  In Count II, plaintiffs allege that by "expect[ing], requir[ing] and induc[ing]" the plaintiffs to work overtime hours, the VA has violated the provisions of 38 U.S.C. §§ 7459(a) and (b), which prohibit the VA from requiring nursing staff to work more than forty hours in an administrative workweek or for more than eight consecutive hours (except in emergencies as provided in subsection (c) and with other exceptions not relevant here).  Compl. at ¶¶ 44-51.  Count III alleges that the VA's actions have violated certain agency handbooks and directives governing work schedules and overtime pay.  Id. at ¶¶ 52-67.  In Count IV, plaintiffs allege that by "expect[ing], requir[ing] and induc[ing]" the plaintiffs to work overtime hours without compensation, the VA has violated its own basic pay regulations and policies.  Id. at ¶¶ 68-74.  Count V alleges that the VA has been "unjustly enriched" by its practice of failing to pay its nurses for overtime hours worked, and Count VI seeks recovery of backpay on a theory of quantum meruit.  Id. at ¶¶ 75-82.

## DISCUSSION

### I.    Jurisdiction

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages (United States v. Mitchell, 463 U.S. 206, 215 (1983)), but it does not confer any substantive rights.  United States v. Testan, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract,

---

[3] See note 1, supra.

statute, regulation or constitutional provision.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

In this case, Counts I-IV of the complaint are based on statutory and regulatory provisions.  To determine whether those statutes and regulations are "money-mandating," the court applies a two-step test.  Samish Indian Nation v. United States, 657 F.3d 1330, 1335 (Fed. Cir. 2011).  First, the court determines whether any substantive law imposes specific obligations on the Government.  Id.  If that condition is met, then the court proceeds to step two, "whether the relevant source of substantive law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes."  Id. (quoting United States v. Navajo Nation, 556 U.S. 287, 291 (2009) (quotations omitted)).  The Court of Federal Claims has jurisdiction under the Tucker Act "if the substantive law at issue is 'reasonably amenable to the reading that it mandates a right of recovery in damages.'"  Id. (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003)).

There is no dispute that this Court has jurisdiction over Counts I, III, and IV of the complaint, which assert claims for backpay and other monetary relief based on alleged violations of 38 U.S.C. § 7453 (the statute establishing entitlement to pay at overtime rates in specified situations) (Count I) and VA policies and procedures governing employees' entitlement to the payment of overtime and basic pay (Counts III and IV).  The statutory and regulatory provisions that form the bases for these claims are clearly "money-mandating," as they require the VA "to pay employees certain amounts under certain circumstances."  Price v. Panetta, 674 F.3d 1335, 1339 (Fed. Cir. 2012) (citing Hall v. United States, 617 F.3d 1313, 1317–18 (Fed. Cir. 2010) (compensation for days employee was engaged in jury service); Brodowy v. United States, 482 F.3d 1370, 1375–76 (Fed. Cir. 2007) (statute providing additional pay to FAA employees transferring between certain positions is money mandating); In re United States, 463 F.3d 1328, 1334 (Fed. Cir. 2006) (statute fixing salary of bankruptcy judges is money mandating); Bosco v. United States, 931 F.2d 879, 882 (Fed. Cir. 1991) ("prevailing rate" wage statute is money mandating).  This Court therefore has jurisdiction over Counts I, III, and IV under the Tucker Act.

On the other hand, the government contends that this Court lacks jurisdiction over the statutory claim in Count II of the complaint, which alleges a violation of 38 U.S.C. § 7459.  That provision states, in pertinent part, that:

> Except as provided in subsection (c) [providing exceptions for specified emergency situations], the Secretary may not require nursing staff to work more than 40 hours (or 24 hours if such staff is covered under section 7456 of this title) in an administrative work week or more than eight consecutive hours (or 12 hours if such staff is covered under section 7456 or 7456A of this title).

38 U.S.C. § 7459(a).

As the government correctly observes, nothing on the face of this provision requires the payment of money to nursing staff where the prohibition it contains is violated.  The plaintiffs argue, however, that while § 7459(a) "may not expressly provide for money damages, the statute

does expressly implicate issues pertaining to overtime work, which under 38 U.S.C. § 7453 must be compensated at one and one-half times a nurse's basic hourly rate of pay." Pls.' Resp. at 24. Plaintiffs also note that the Complaint alleges that nurses who have refused to work beyond the hours specified in § 7459(a) have been subjected to "intensified scrutiny" as well as disciplinary actions and that it can be inferred that the statute creates a right on the part of these individuals to recover damages for losses arising out of such actions. Id. at 24-25.

The plaintiffs' arguments are unpersuasive. The requirement that nurses be compensated at time and a half rates does not derive from § 7459; it is based on § 7453, which is, as the Court noted above, a money-mandating statute. On the other hand, there is nothing in § 7459 that suggests that the provision, in and of itself, creates a substantive right to money damages for its violation.

Moreover, to the extent that plaintiffs or members of the putative class have been disciplined or suffered adverse personnel actions as a result of refusing to work overtime hours as prohibited by § 7459(a), they would be asserting a right granted to them by § 7459(b)(2), which states that such a refusal may not be grounds for discrimination, dismissal or "any other adverse personnel action." Such claims would be covered by the disciplinary and grievance procedures set forth at 38 U.S.C. Chapter 74, Subch. V, and would not form a basis for a claim under the Tucker Act in this Court.

Similarly unpersuasive are the plaintiffs' arguments that this Court has jurisdiction over Counts V and VI of their complaint, which are premised on theories of unjust enrichment and "quantum meruit," both of which are equitable doctrines that are based on contracts implied in law. Keehn v. United States, 110 Fed. Cl. 306, 329-30 (2013). "Implied-in-law" claims are not within this Court's Tucker Act jurisdiction. See, e.g., Lumbermens Mut. Cas. Co. v. United States, 654 F.3d 1305, 1316 (Fed. Cir. 2011).[4]

Finally, the plaintiffs cite James v. Caldera, 159 F.3d 573, 580-81 (Fed. Cir. 1998) for the proposition that Counts II, V, and VI should not be dismissed because they are "incidental to and collateral of" the monetary claims in their complaint over which this Court does possess jurisdiction. Pls.' Resp. at 25-26. But contrary to plaintiffs' argument, this limited grant of authority to issue equitable orders exists "[t]o provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). It does not provide a basis for exercising jurisdiction over separate causes of action for which no Tucker Act jurisdiction lies.

---

[4]  In their response brief (at page 26), the plaintiffs appear to recharacterize the claims in Counts V and VI as being based on breach of an implied-in-fact contract. Assuming the plaintiffs were to move to amend their complaint to assert such a claim, this Court would have Tucker Act jurisdiction to resolve it. But such an amendment would be futile as the claim would be subject to dismissal under Rule 12(b)(6) because the relationship between the government and its employees is governed by statute and regulations, not contract. Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995); see also Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (observing that it is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government").

## II.      Failure to State a Claim

The Court turns now to the government's motion to dismiss under RCFC 12(b)(6).  In ruling on a RCFC 12(b)(6) motion to dismiss, the court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  While the court must draw all reasonable inferences in favor of the non-moving party, Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp.  v. Twombly, 550 U.S. 544, 555 (2007).  In other words, plaintiffs' claim must be plausible on its face.  Id. at 570; Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### A.  Counts I and III—Violation of the Overtime Provisions of 38 U.S.C. § 7453 and Implementing VA Rules and Directives

Counts I and III of the Complaint allege that in violation of statute and its own implementing rules and directives the VA has engaged in a practice of failing and refusing to pay plaintiffs at the time and one-half rates prescribed by 38 U.S.C. § 7453(e)(1) for "officially ordered or approved hours of service performed in excess of 40 hours in the administrative workweek or in excess of eight consecutive hours."  Specifically, and as discussed in greater detail above, the plaintiffs allege that they were "expected, required, and induced" on a "recurring and involuntary basis" to work overtime hours in order to meet the VA's requirement that they respond to "View Alerts" in a prompt and timely fashion.  They allege that nurse supervisors and other VA personnel with the authority to order and approve overtime work and pay had knowledge that plaintiffs were performing this overtime work and that nurses who did not work overtime were subjected to discipline for failing to complete a sufficient volume of View Alerts.

The government contends that plaintiffs have failed to set forth facts in Counts I and III sufficient to establish their entitlement to overtime pay under 38 U.S.C. § 7453(e)(1).  It argues that the complaint does not allege that the plaintiffs were explicitly directed to work overtime hours and that, therefore, they have failed to allege that the overtime hours that they worked were "officially ordered or approved" as required by the statute.  Def.'s Mot. to Dismiss at 8.  Relying upon the Federal Circuit's decision in Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 549 U.S. 1321 (2007), which involved the interpretation of essentially identical statutory language contained in the Federal Employee Pay Act (FEPA), 5 U.S.C. § 5542, the government argues that "[t]itle 38's requirement that overtime be 'officially ordered or approved' requires a more formal means of authorization than contemplated by . . . . plaintiffs in this case."  Def.'s Mot. to Dismiss at 9.[5]

---

[5]  The government also argues that plaintiffs' own allegations reveal that overtime pay could not have been officially ordered or approved because the Complaint states that requests for overtime pay "in order to complete additional View Alerts were denied."  Def.'s Mot. to Dismiss at 7

In <u>Doe</u>, attorneys employed by the Department of Justice filed a class action suit in this Court seeking overtime compensation under FEPA.  That statute provides, in pertinent part, that "[f]or full-time, part-time, and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek or . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for . . . at [the overtime rates provided by the FEPA statute]."  5 U.S.C. § 5542(a).

The plaintiffs in <u>Doe</u>, like the plaintiffs here, did not allege that they had been explicitly ordered to perform their required work on an overtime basis.  54 Fed. Cl. 404, 406 (2002) (observing that "[n]o authorized official directed plaintiffs to perform duties during the period before or after their eight-hour day or forty-hour week" and "[n]o authorized official expressly approved the performance of extra hours of work by plaintiffs").  Nonetheless, relying upon a line of Court of Claims decisions that began with <u>Anderson v. United States</u>, 136 Ct. Cl. 365 (1956), this Court concluded that the statutory requirement that overtime hours be "officially ordered or approved" did not require such an explicit order to perform work on an overtime basis.  Instead, the Court held that the requirement that overtime be "officially ordered or approved" was satisfied by evidence establishing that the plaintiffs had been "induced" to work overtime.  <u>Doe</u>, 54 Fed. Cl. at 416-17.  It found such inducement based on the unrebutted evidence that DOJ attorneys were expected by managers at every level of the Justice Department to put in extra hours, that this expectation was communicated to them both verbally and through written policy statements, that their workloads could not be satisfactorily handled without working overtime hours, and that they did, in fact, work substantial amounts of overtime with the knowledge of their supervisors and high level officials at DOJ.  54 Fed. Cl. at 405.[6]

In this case, the allegations in plaintiffs' complaint parallel those of the DOJ attorneys in <u>Doe</u>.  Plaintiffs allege that they worked significant amounts of overtime hours responding to View Alerts, that such alerts could come at any time of the day or night, that their supervisors

---

(quoting Compl. at ¶ 21).  This argument is circular and lacks merit.  If plaintiffs were officially ordered to work overtime, they are entitled to receive pay at overtime rates; the fact that their requests for pay at overtime rates were subsequently denied would not defeat their legal entitlement.

[6] The Court found that:

> Attorneys are expected to work overtime and they do so on a regular basis.  They are induced to work overtime by direct supervisors, if not authorized officials as defendant would define them.  The overtime that they work is well known at the highest levels of the Justice Department.  The Department recognizes that it could not function properly within its budget constraints without officially induced and approved overtime work by government attorneys.

54 Fed. Cl. at 405.

and other VA personnel knew that they were performing these duties on an overtime basis (and, in fact, supplied them with agency laptops so that they could work on the View Alerts at home), that nurses who did not timely respond to View Alerts were subject to intensified scrutiny and possible disciplinary action, and that—in order to perform these duties—nurses were required to work overtime.  These allegations—if proven true—would likely suffice to establish precisely the sort of "inducement" that this Court found sufficient to create an entitlement to overtime on the part of DOJ attorneys within the meaning of 5 U.S.C. § 5542(a).

The key issues in this case, therefore, are whether and to what extent this Court's conclusion in <u>Doe</u>—that "inducement" to work overtime satisfies statutory language requiring that such overtime be "officially ordered or approved"—survived the Federal Circuit's reversal of this Court's decision on appeal and whether there is any reason to distinguish the FEPA statute from title 38.  The plaintiffs argue that the court of appeals' reversal of this Court's decision in <u>Doe</u> was based entirely on the existence of a regulation promulgated by the Office of Personnel Management (OPM) pursuant to FEPA, 5 C.F.R. § 550.111(c), which required that overtime be "ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated."  Pls.' Surreply at 2.  They point out that the OPM regulation does not govern here and that the VA has not promulgated a similar rule requiring that orders to work overtime be memorialized in writing by an authorized official.  Pls.' Surreply at 3.  They contend that "[<u>b</u>]<u>ut for a procedural writing requirement, the</u> [court of appeals] <u>would not have reversed</u> the lower court's decision that 'official inducement suffices to warrant compensation.'"  <u>Id.</u> (citing <u>Doe</u>, 372 F.3d at 1348) (emphasis in original).

The government disagrees with the plaintiffs' characterization of the court of appeals' decision.  It contends that—in addition to concluding that OPM's regulation required that there be a written order from an authorized official—the court of appeals rejected the reasoning of the <u>Anderson</u> line of cases that "inducement" to work overtime satisfied the statutory requirement that overtime be "officially ordered or approved."  Def.'s Resp. to Pls.' Surreply at 2.

For the reasons set forth below, the Court concludes that in light of the Federal Circuit's reasoning in <u>Doe</u>, a showing that plaintiffs were "induced" to work overtime, or that they were "required" [7] to do so in order to cope with their workloads, is insufficient to establish their entitlement to receive pay at overtime rates under 38 U.S.C. § 7453.  Instead, entitlement to overtime pay is triggered only when an authorized VA official has, either verbally or in writing, expressly directed an employee to perform specified hours of overtime outside of their regular shifts in order to meet work requirements, or where such official has approved pay at overtime

---

[7]   While the plaintiffs have emphasized that they are "required" to work overtime by VA, it is clear that this "requirement" does not arise out of any explicit order that the nurses should or must respond to View Alerts after they complete eight consecutive hours of work in a day or forty hours in a week.  Instead, the "requirement" to which plaintiffs refer is a requirement that they perform certain work ("promptly" responding to a high volume of View Alerts).  <u>See</u> Pls.' Resp. at 5, 17.  It is that requirement to promptly respond, when coupled with the rest of plaintiffs' workload, which they allege "requires" them to respond to the View Alerts on an overtime basis.

rates after the fact.  Because plaintiffs have not alleged that they were expressly directed to work specific overtime hours for which they were not compensated, the government's motion to dismiss Counts I and III must be granted.

### 1.  The Court of Appeals' Decision in <u>Doe</u>

In <u>Doe</u>, the government sought reversal of this Court's decision ruling the DOJ attorneys were entitled to overtime pay under FEPA on the basis of an OPM regulation requiring that—in order to be compensable at overtime rates—an official with delegated authority to do so must expressly order or approve the working of overtime hours in writing.  A careful reading of the court of appeals' decision reveals, however, that in reversing this Court's decision in reliance upon the OPM regulation, the court also rejected the theory of "induced" overtime upon which plaintiffs rely here.

The court of appeals began by addressing the question of whether a Federal Circuit panel had the authority to modify or overrule the Court of Claims' <u>en</u> <u>banc</u> decision in <u>Anderson</u>, which the court characterized as: 1) having "held the writing requirement [in the OPM regulation] invalid as inconsistent with the purpose of FEPA because it added a procedural requirement that was not reflected in the statute" and 2) having "also suggested that equitable considerations prevented the government from denying overtime compensation where it 'induced' overtime work."  372 F.3d at 1354.  The court of appeals concluded, in agreement with the government, that the panel did possess the authority to overrule <u>Anderson</u>, in light of the Supreme Court's intervening decision in <u>Schweiker v. Hansen</u>, 450 U.S. 785 (1981).  <u>Doe</u>, 372 F.3d at 1355.[8]

The court of appeals characterized the <u>Hansen</u> decision as concluding that a writing requirement in a regulation is not invalid "simply because it add[s] an additional procedural requirement to the substantive requirements of [a] statute."  It concluded that this holding was "directly at odds with the <u>Anderson</u> line of cases."  <u>Doe</u>, 372 F.3d at 1356.  It further concluded that <u>Hansen</u> also undermined the reliance on "equitable considerations" that was at the heart of the <u>Anderson</u> line of cases because <u>Hansen</u> (as reinforced by <u>Office of Personnel Management v. Richmond</u>, 486 U.S. 414 (1990)) stood for the proposition that both statutory and regulatory requirements impose binding requirements that must be followed, notwithstanding equitable

---

[8] The issue in <u>Hansen</u> was whether the Social Security Administration (SSA) was estopped from enforcing a regulatory requirement that applications for Social Security benefits be in writing, where the plaintiff had been led to believe by SSA representatives that an oral application for benefits was sufficient.  <u>See Doe</u>, 372 F.3d at 1355 (citing <u>Hansen</u>, 450 U.S. at 786).  The Court rejected the decision of the Second Circuit in that case, which had ruled for the plaintiff, holding that the court of appeals' "distinction between [the plaintiff's] substantiv[e] eligib[ility] and her failure to satisfy a 'procedural requirement' does not justify estopping petitioner in this case."  <u>Hansen</u>, 450 U.S. at 790 (alterations in original).  It observed that "[a] court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits."  <u>Id.</u>

considerations.  <u>Doe</u>, 372 F.3d at 1356-57.  It observed that "in light of <u>Hansen</u> and <u>Richmond</u>, we are compelled to hold that the <u>Anderson</u> line of cases is no longer good law and that the written order requirement is not invalid on the ground that it imposes a procedural requirement that limits the right to overtime compensation under the statute or because it is inequitable."  <u>Id.</u> at 1357.

The court of appeals then turned to the question of whether the OPM regulation was entitled to deference under <u>Chevron U.S.A. v Natural Resources Defense Council</u>, 467 U.S. 837 (1984).  It began by asking "whether Congress has directly spoken to the precise question at issue."  <u>Doe</u>, 372 F.3d at 1358.  It concluded that the terms "ordered" and "approved" are ambiguous because they "are broad enough to encompass either written or oral communications (or both)."  <u>Id.</u> at 1359.  The court further concluded, applying <u>Chevron</u> step two, that the regulation was not unreasonable on the grounds that the addition of a writing requirement would be contrary to the statute (FEPA).  <u>Id.</u> at 1360.  It held that the statutory requirement that overtime work be "officially ordered or approved" "in and of itself is not at odds with the regulation's writing requirement, nor does it suggest that inducement is sufficient to constitute official order or approval."  <u>Id.</u>

The court of appeals explained that the statutory structure of FEPA provided support for OPM's decision to impose a formal procedure requiring an order or approval to be in writing because FEPA also contains a separate provision for pay at overtime rates when an employee is in a position "in which the hours of duty cannot be controlled administratively."  <u>Id.</u> (citing 5 U.S.C. § 5545(c)(2)).  The court also observed that the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-209,  "incorporated a different standard for overtime compensation that allowed recovery for inducement" by permitting an employee to receive overtime compensation if an employer "suffer[s] or permit[s]" the employee to work overtime hours.  <u>Id.</u> (citing 29 U.S.C. § 203(g)).  That FEPA did not use similar language, the court of appeals reasoned, supported OPM's determination that a more formal means of authorization should be required.  <u>Id.</u>  Finally, the court observed, the writing requirement also served an important purpose of FEPA discussed in its legislative history—to impose oversight mechanisms and safeguards in order to control the government's potential liability for overtime.  <u>Id.</u> at 1361.

Finally, the court of appeals held that the writing requirement contained in OPM's regulations was not satisfied by the written documents referenced by the plaintiffs which included memoranda, manuals, bulletins and reports which reflected the expectation of DOJ officials that attorneys would work overtime in order to handle their caseloads.  <u>Id.</u> at 1362.  The majority of the documents were not written by officials who had been delegated authority to order or approve overtime (372 F.3d at 1362); further, they did not order attorneys to work any particular amount of overtime, nor did they contain an "express directive" to work overtime.  <u>Id.</u> at 1363; <u>see</u> <u>Carlsen v. United States</u>, 521 F.3d 1371, 1375 (Fed. Cir. 2008) (rejecting plaintiffs' reliance upon manuals and directives requiring employees to generally follow their supervisors' instructions and emails directing employees to attend meetings because such documents  "do not direct the performance of overtime work"; because "to treat such documents as written directives to perform overtime work would have the effect of converting oral directives to perform particular work into written directives to work overtime in virtually any government agency";

and because "none of them directed work in general, or certain tasks in particular, to be performed outside the employees' regularly scheduled shifts").

### 2.  The Application of <u>Doe</u> to this Case

As is readily apparent from a reading of <u>Doe</u>, there is nothing in that decision which mandates that an order to work overtime hours (or the approval of the working of such hours after the fact) be in writing in order for overtime to be "officially ordered or approved."  To the contrary, the court's discussion of the application of <u>Chevron</u> step one to the OPM regulation implementing FEPA recognizes that the statutory terms "order" and "approve" encompass both written and oral directions.  <u>Doe</u>, 372 F.3d at 1359.  While the court ruled that it was not unreasonable for OPM to impose a writing requirement in the exercise of its rulemaking authority, it does not follow that the statute cannot be read to permit overtime to be ordered or approved verbally.  In fact, the government has acknowledged that the VA does not require an authorization to work overtime to be reduced to writing, noting that "urgent or emergency situations involving patient care may make such a requirement impractical."  Def.'s Mot. to Dismiss at 10, n.4.[9]

The central question here is what effect—if any—<u>Doe</u> has on the viability of plaintiffs' argument that overtime is compensable where it is "induced" and not expressly ordered.  With respect to that issue, plaintiffs correctly observe that title 38, unlike FEPA, does not contain a provision creating an alternative basis for entitlement to overtime pay for employees who occupy positions in which their hours cannot be controlled administratively.  The court of appeals found that the existence of such a provision under FEPA supported the reasonableness of the OPM regulation establishing a more formal approval process for authorizing overtime for employees whose hours of work are subject to administrative control.  <u>Doe</u>, 372 F.3d at 1360.

Nonetheless, the Court finds more significant several other critical factors that led the court of appeals to reject overtime claims based on inducement under FEPA.  First, and foremost, title 38, like FEPA, uses the term "officially ordered or approved"; it does not employ the kind of expansive language and liberal standard contained in the FLSA (requiring payment at overtime rates where overtime work is "suffered or permitted").  As the court of appeals noted (372 F.3d at 1360), the FLSA's language "allowed recovery for inducement," whereas the language of FEPA appears to contemplate a "more formal means of authorization."  <u>Id.</u> at 1361.

---

[9] The parties have cited assorted VA issuances and handbooks in their pleadings.  As the court of appeals has observed, "DVA has not issued a comprehensive set of regulations implementing the VHA personnel provisions in title 38" but has instead "set forth its interpretation of the title 38 personnel provisions in the form of manuals, directives, and handbooks."  <u>James v. Von Zemenszky</u>, 284 F.3d 1310, 1318-19 (Fed. Cir. 2002).  Unfortunately, and somewhat surprisingly, none of the cited issuances and handbooks appear to prescribe any process governing how overtime may be "officially ordered or approved," and the Court was advised by counsel at oral argument that such a prescribed process does not exist.

Second, the court of appeals' rejection of the consideration of equitable factors in determining whether overtime has been "officially ordered and approved" counsels in favor of a strict interpretation of the statutory language. As the court of appeals observed, id. at 1359, that language suggests that there must be a degree of formality to the process of ordering and approving overtime "officially." The kind of implicit approval of overtime alleged in plaintiffs' complaint does not meet that standard of formality or clarity.

The court of appeals also relied on the legislative history of FEPA and noted that an advanced written approval process would promote the necessary oversight and controls over the government's potential overtime liability. Id. at 1360. This same consideration, coupled with the statutory language, leads this Court to conclude that the "officially ordered and approved" language of title 38 should not be read to create a liability for overtime pay based on implied directives or a standard of "inducement" to work overtime. Instead, what is required in order to trigger entitlement to overtime pay under 38 U.S.C. § 7453(e)(1) is an express directive from an authorized VA official (whether written or verbal), ordering (or explicitly authorizing) an employee to respond to View Alerts after they have completed eight consecutive hours of work in a day or forty hours in a week.[10]

In this case, the plaintiffs do not allege that they received such express directions, but rely instead upon a theory of implicit authorization or inducement. For this reason, the Court agrees that, under the reasoning of the court of appeals in Doe, Counts I and III of plaintiffs' complaint must be dismissed for failure to state a claim.[11]

---

[10] The Court's articulation of a general standard to govern when overtime has been "officially ordered or approved" is based solely on the statutory language, read in light of Doe. As explained supra at note 9, the VA has the authority to promulgate regulations governing entitlement to overtime pay that would provide greater specificity regarding what VA considers an "official order" to work overtime and that would identify a process by which nurses could request advance approval of such overtime.

[11] In Doe, the court of appeals acknowledged that there exists a "legitimate[] concern[]" that federal agencies may be taking advantage of the "officially ordered" language to "eva[de]" legal requirements and "in effect . . . coerc[e] uncompensated overtime." 372 F.3d at 1364. This is a particularly troubling possibility in the context of title 38 nurses, for whom there exists an express statutory prohibition against the compulsion of overtime in non-emergency situations, even when the nurses will be compensated for working such overtime. 38 U.S.C. § 7459. The government has suggested that individual nurses could challenge a management practice of assigning them more tasks than they can complete without working uncompensated overtime in the context of an appeal of an adverse personnel action taken against them. See also Doe, 372 F.3d at 1364. The Court assumes that the opportunity to secure relief by provoking an adverse action that accuses them of poor performance or of shirking their duties is cold comfort to the cadre of dedicated professionals who care for our Nation's veterans. Nonetheless, the Court's conclusion that overtime pay is not available to the nurses in these circumstances is compelled by the statutory language as interpreted in Doe.

**B.  Count IV—Violations of VA's Basic Pay Regulations and Policies**

In Count IV of their complaint, the plaintiffs allege that the VA violated its own basic pay regulations and policies by failing to compensate them at basic hourly rates of pay for the work that they performed to respond to View Alerts outside of their regularly scheduled administrative workweek.  Because plaintiffs have failed to establish that these regulations provide them with an entitlement to be paid at basic rates of pay for this work, Count IV must be dismissed for failure to state a claim upon which relief may be granted.

The basic rate of pay for VA employees is set pursuant to 38 U.S.C. § 7404 in the form of an annual rate of pay.  The plaintiffs have identified no provision in the statute that entitles employees to receive basic pay that exceeds this annual rate when they perform extra hours of work outside of their prescribed shifts.  Instead, the statute provides that employees who work in excess of forty hours in an administrative workweek, or eight consecutive hours, shall be compensated at time and a half rates, but only if such work is "officially ordered or approved."

Indeed, the plaintiffs' argument that they are entitled to be paid at "basic rates" for hours of overtime worked is irreconcilable with the concept of "basic pay" itself.  "Basic pay," by definition, does not include pay for additional hours or overtime work.  Nigg v. Merit Sys. Prot. Bd., 321 F.3d 1381, 1385 (Fed. Cir. 2003); Mattern v. Dep't of Treasury, 291 F.3d 1366, 1370 (Fed. Cir. 2002); Triponi v. United States, 633 F.2d 933, 935 (Ct. Cl. 1980).  Accordingly, Count IV of the complaint, alleging that the VA violated its own basic pay regulations and policies by failing to compensate plaintiffs at basic pay rates for the work that they performed on View Alerts outside of their regular duty hours, fails to state a claim on which relief may be granted.[12]

**CONCLUSION**

Based on the foregoing, the government's motion is granted, and all counts in plaintiffs' complaint are dismissed.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

---

[12]   In their response to the government's motion to dismiss, the plaintiffs argued that the VA violated its own rules and policies by failing to schedule its nurses for overtime, notwithstanding that their work requires it. Pls.' Resp. at 19-21.  This claim was not made in plaintiffs' complaint and so need not be addressed on this motion to dismiss.  It is, in any event, meritless, for the reasons set forth in the government's Reply at 7-9.