# In the United States Court of Federal Claims

|  |  |
|---|---|
| STEPHANIE MERCIER, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 12-920C |
|  | ) (Filed: October 29, 2021) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

*Michael Hamilton*, Provost Umphrey Law Firm LLP, Nashville, TN, *William H. Narwold*, Motley Rice LLC, Hartford, CT, *Guy Fisher*, Provost Umphrey Law Firm LLP, Beaumont, TX, *Robert H. Stropp, Jr.*, Mooney, Green, Saindon, Murphy & Welch, P.C., Washington, D.C., *Bennett P. Allen*, Cook, Allen & Logothetis, LLC, Cincinnati, OH, and *E. Douglas Richards*, E. Douglas Richards, PSC, Lexington, KY, for Plaintiffs.

*P. Davis Oliver*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Reginald T. Blades, Jr.*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, and *Brian M. Boynton*, Acting Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**Kaplan, Chief Judge.**

### BACKGROUND[1]

Plaintiffs in this class action lawsuit are 3,207 Advanced Practice Registered Nurses ("APRNs") and Physicians Assistants ("PAs") currently or formerly employed by the United States Department of Veterans Affairs ("VA"). They claim that the VA violated Title 38 of the United States Code and the VA's own policies and handbooks when it failed to pay them overtime for work they were induced to perform outside of their regular tours of duty in the VA's Computerized Patient Record System ("CPRS").

---

[1] The procedural background of the case is set forth in detail in the Court's Opinion preliminarily approving the Settlement Agreement. See ECF No. 248.

Plaintiffs filed this suit on December 28, 2012. See Compl., ECF No. 1. The government filed a motion to dismiss on June 20, 2013, ECF No. 13, which the Court granted on February 27, 2014, ECF No. 24. See also Mercier v. United States (Mercier I), 114 Fed. Cl. 795 (2014), rev'd in part, Mercier v. United States (Mercier II) 786 F.3d 971 (Fed. Cir. 2015). The Court held that overtime is available under 38 U.S.C. § 7453(e)(1) only when it is "officially ordered or approved," and that this meant that an employee must be "expressly directed . . . to perform specified hours of overtime outside of their regular shifts." Mercier I, 114 Fed. Cl. at 802. Because Plaintiffs "ha[d] not alleged that they were expressly directed to work specific overtime hours for which they were not compensated," the Court concluded that they had failed to state a claim, and it granted the government's motion to dismiss. See id.

Plaintiffs timely appealed this Court's decision, and on May 15, 2015, the Federal Circuit reversed. See Mercier II, 786 F.3d at 983. Citing Anderson v. United States, 136 Ct. Cl. 365 (1956), it held that overtime may be considered "officially ordered or approved" under Title 38 where it is "induced" and not expressly directed. Mercier II, 786 F.3d at 982. It therefore remanded the case to allow the Court to apply the Anderson standard to Plaintiffs' claims. Id. at 983.

On remand, the parties engaged in extensive discovery, see, e.g., ECF Nos. 81, 87, 89, 101, & 103, and the case was certified as a class action on June 7, 2018, ECF No. 138. Merits discovery closed in December 2020, and the Court scheduled the trial to begin on February 22, 2021. ECF No. 207.

On December 14, 2020, at the parties' request, the Court transferred the case to Senior Judge Marian Horn for purposes of settlement discussions, in accordance with Appendix H of the Rules of the Court of Federal Claims ("RCFC"). ECF No. 220. On January 6, 2021, just six weeks before trial was to begin, the parties notified the Court that, following mediation on January 4, 2021, they had reached an agreement in principle to settle the litigation. ECF No. 226. The Court therefore canceled the trial. ECF No. 228. On July 8, 2021, the parties executed a Settlement Agreement resolving the unpaid overtime claims, see Pls.' Mem. of Law in Supp. of Their Unopposed Mot. for Prelim. Approval of Class Action Settlement Agreement and Approval of Notices of Class Action Settlement at 3, ECF No. 245, which the Court preliminarily approved on July 16, 2021, Op. and Order ("Preliminary Approval Order"), ECF No. 248.

Currently before the Court is Plaintiffs' Motion for Final Approval of Settlement Agreement, ECF No. 249, as well as class counsel's Motion for an Award of Attorneys' Fees, Costs, and Expenses, and Case Contribution Award to Class Representatives, ECF No. 251. For the reasons set forth below, the motion for approval of the Settlement Agreement is **GRANTED**. Class counsel's motion for an award of attorneys' fees, costs, and expenses, and for case contribution awards is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**DISCUSSION**

I. **The Terms of the Settlement Agreement**

The Settlement Agreement provides that the government shall pay $160,000,000 to resolve Plaintiffs' claims for unpaid overtime, interest, and attorneys' fees and expenses ("the Gross Settlement Fund"). App. to Pls.' Mem. of Law in Supp. of Mot. for Final Approval of Settlement Agreement ("App. to Pls.' Mem.") at A63–A74 (Ex. 5, Settlement Agreement) ¶ 9, ECF 250-1.[2] The Gross Settlement Fund is comprised of $124,331,428.18 in gross back pay and $35,668,571.82 in interest. Settlement Agreement ¶ 10. Subject to the Court's approval, the Settlement Agreement designates $48,463,544.33 from the Gross Settlement Fund for attorneys' fees and expenses, $265,000 for costs to be incurred by the Settlement Administrator to administer the settlement, and $120,000 for case contribution awards to the six class representatives. Id. ¶ 14.

The amount that remains after deducting attorneys' fees and expenses, the Administrator's costs, and case contribution awards ("the Net Settlement Amount") consists of class members' back pay and interest, id. ¶ 10, from which the government will withhold federal taxes, id. ¶¶ 10–11. The Settlement Agreement provides that the amount of any reduction in attorneys' fees and expenses that this Court orders shall be added to the Net Settlement Amount. Id. ¶ 25. The Settlement Agreement further states that funds will be paid to individual plaintiffs from the Net Settlement Amount based on each plaintiff's proportionate share calculated from the number of hours each worked in excess of forty hours per week during the class period multiplied by his or her overtime rate of pay. See Pls.' Mem. of Law in Supp. of Mot. for Final Approval of Settlement Agreement ("Pls.' Mem.") at 5, 12, ECF No. 250; see also Attach. A to the Settlement Agreement ("Attachment A") (listing plaintiffs and their proportionate shares), ECF No. 247.

The Gross Settlement Fund of $160,000,000, according to Plaintiffs' damages expert, represents slightly more than 65% of the maximum amount Plaintiffs could have recovered if they had prevailed at trial. App. to Pls.' Mem. at A13–A21 (Ex. 2, Decl. of Dr. Liesl M. Fox) ("Fox Decl.") ¶ 10, ECF No. 250-1. Under the Settlement Agreement, each plaintiff will receive his or her proportionate share of the Net Settlement Amount to compensate for unpaid overtime based on an analysis of his or her work records, subject to the agreement of the parties that the minimum payment would be $250. Id.

---

[2] Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement Agreement, ECF No. 250, incorporates an appendix, ECF No. 250-1, which is paginated by numerals preceded by an "A" and tracks the pagination imprinted on the document by the court's electronic filing system. The exhibits within that appendix are independently paginated, and the Court refers to the exhibits' page numbers when citing the exhibits.

## II. The Terms of the Settlement Agreement are Fair, Reasonable, and Adequate

RCFC 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval," RCFC 23(e), and "only after a hearing and only on finding that [the settlement agreement] is fair, reasonable, and adequate," RCFC 23(e)(2). In determining whether a proposed settlement is fair and reasonable, the Court looks to the "'paramount' twin elements of procedural and substantive fairness." Courval v. United States, 140 Fed. Cl. 133, 139 (2018) (quoting Christensen v. United States, 65 Fed. Cl. 625, 629 (2005)).

### A. Procedural Fairness

Procedural fairness relates to "whether the settlement resulted from 'arms-length negotiations and whether plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" Id. (quoting Christensen, 65 Fed. Cl. at 629).

The Court concludes that the proposed settlement is procedurally fair. Class counsel has significant experience litigating class actions, including actions for the payment of overtime. App. to Pls.' Mem. at A22–A38 (Ex. 3, Decl. of Michael Hamilton) ("Hamilton Decl.") ¶¶ 2, 8. Counsel zealously represented the class through almost nine years of litigation, including a detour to the Court of Appeals. See id. ¶¶ 9–10. In addition, the parties engaged in extensive discovery regarding class certification, including several rounds of written discovery and seventeen depositions. Id. ¶ 10. Following class certification, the parties engaged in rigorous merits discovery, during which an additional thirty-one depositions were taken, including five expert depositions and more than ten RCFC 30(b)(6) depositions. Id.; Pls.' Mem. at 3. Plaintiffs' expert analyzed over 318 million records, including payroll records, tour of duty records, date- and time-stamped Notes and Orders from the CPRS, and, where available, logs of View Alerts received and/or processed and records of when class members had signed into or out of the CPRS. Fox Decl. ¶¶ 7–8.

The Court is satisfied that the parties' settlement negotiations, which were facilitated by a judge of this court, were conducted in good faith; without collusion, preferential treatment, or other deficiencies; and with an interest in ultimately resolving the case by settlement. In short, the Court concludes that the Settlement Agreement now before it "resulted from arms-length negotiations" and the "effective representation of the class's interest." Courval, 140 Fed. Cl. at 139 (citations and internal quotation marks omitted).

In addition, RCFC 23(e)(1)(B) obligates the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal" before approving a class action settlement. To meet this requirement, a notice of settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Haggart v. Woodley, 809 F.3d 1336, 1348–49 (Fed. Cir. 2016) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

Here, notice of the terms of the settlement was reasonably calculated to apprise all interested parties of the settlement and its terms, as well as their rights to make objections. In accordance with RCFC 23(e)(1)(B), the Court's Preliminary Approval Order sanctioned the language that class counsel used in the Notices of Class Action Settlement, appointed BrownGreer PLC as the Settlement Administrator, and directed that the Administrator mail Notices to each class member. See Prelim. Approval Order at 5–6. In addition, as a backup, the Court directed that the Administrator establish a website by August 2, 2021, on which the Administrator would post the Notices, the Second Amended Complaint, the Preliminary Approval Order, and answers to frequently asked questions. Id. at 6. The Court also directed that Plaintiffs file their motion for attorneys' fees, expenses, and case contribution awards by August 16, 2021, and that the Administrator post the Motion to the website once it was filed. Id.; see also Mot. for an Award of Att'ys' Fees, Costs, and Expenses, and Case Contribution Award to Class Representatives ("Mot. for Att'ys' Fees"), ECF No. 251.

As confirmed by Frank Trani, a partner at BrownGreer, the Administrator followed the Court's orders regarding notice. See App. to Pls.' Mem. at A39–A62 (Ex. 4, Decl. of Frank Trani) ("Trani Decl.") ¶¶ 5–6; Suppl. Decl. of Frank J. Trani ("Suppl. Trani Decl.") ¶¶ 3–5, ECF No. 258-1. Mr. Trani reports that between August 2, 2021, when BrownGreer mailed the Notices of Class Action Settlement, and September 8, 2021, "there have been a total of 2,962 visits to the settlement website and 247 calls to the settlement call-center." Suppl. Trani Decl. ¶ 6. Additionally, "519 unique class members have logged into their secure portals, a total of 1,104 times." Id. Further, Mr. Trani states, BrownGreer has taken and will continue to take action to secure updated addresses for class members whose Notices were returned as undeliverable. Id. ¶ 5.

Class members have also been given a fair opportunity to register any objections to the settlement. In the Notices and through the website they were directed to postmark any written objections to the proposed settlement or to the Motion for Attorneys' Fees to class counsel by August 30, 2021. See Trani Decl. ¶¶ 5–6. The Court directed class counsel to file any written objections from class members with the Court by September 3, 2021, and to respond to the objections by September 9, 2021. Prelim. Approval Order at 6. Three class members filed objections to the proposed settlement. See Obj. No. 1 ("Houle Obj."), ECF No. 256-1; Obj. No. 2 ("Stenseth Obj."), ECF No. 256-2; Obj. No. 3 ("Calhoun Obj."), ECF No. 256-3. Those objections are discussed below.

The Court held a fairness hearing on the Settlement Agreement on September 14, 2021. Katherine Houle, one of the three class members who filed objections, called into the hearing to explain her concerns. The other two class members chose to rest on their written objections.

Accordingly, based upon the factual record and the representations of counsel during the fairness hearing, the Court concludes that fair notice has been provided to the class members regarding the terms of the proposed settlement.

B.  **Substantive Fairness**

The Court also finds that the Settlement Agreement is substantively fair. Though RCFC 23(e)(2) does not provide a definitive list of the factors to be applied in determining substantive fairness, courts have found the following factors relevant:

(1) The relative strengths of plaintiffs' case in comparison to the proposed settlement;
(2) The recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class;
(3) The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;
(4) The fairness of the settlement to the entire class;
(5) The fairness of the provision for attorney fees;
(6) The ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or a private entity.

Dauphin Island Prop. Owners Ass'n v. United States, 90 Fed. Cl. 95, 102–03 (2009) (citing Berkley v. United States, 59 Fed. Cl. 675, 681–82 (2004)).[3]

"In general, '[s]ettlement is always favored,' especially in class actions where the avoidance of formal litigation can save valuable time and resources." Sabo v. United States, 102 Fed. Cl. 619, 626 (2011) (alteration in original) (quoting Dauphin, 90 Fed. Cl. at 102). In this case, settlement avoids the numerous risks for Plaintiffs associated with continuing this litigation. These include, at the outset, the risk that the Federal Circuit would, on appeal, reverse this Court's findings with respect to class certification (which the government opposed). There is also a risk that Plaintiffs would not have been able to prove by preponderant evidence that the government induced the class representatives and members to work beyond their tours of duty in the CPRS. Further, because the overtime hours allegedly worked by the class members were not recorded in their payroll records, Plaintiffs faced the risk that the Court would find flaws in the methodology Plaintiffs' expert used to reconstruct the amount of overtime they worked.

In addition to these risks of continued litigation, there is no question that further litigation would be expensive, complex, and likely of substantial duration. It bears emphasizing that nine years have already passed since this action was first filed in this court. The case has been to the Court of Appeals once, and discovery has taken quite a bit of time because of the complexity of the issues and the VA's inability to produce the requested information on a timely basis. See, e.g., Order, ECF No. 218 (November 2020 Order directing the government to reimburse Plaintiffs for additional expert fees they incurred due to incomplete production of records by the VA). Further, even if there were a substantial judgment favorable to Plaintiffs it would likely lead to post-trial motions and appeals, which would prolong resolution of the case. A fair settlement is preferable to years of additional litigation.

---

[3] RCFC 23 is substantially similar to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), and decisions applying FRCP 23 are persuasive in this Court. See Haggart v. United States, 89 Fed. Cl. 523, 529 (2009) (citing King v. United States, 84 Fed. Cl. 120, 122 n.2 (2008)).

The terms of the settlement also appear fair, given the risks of litigation. Of the 3,207 class members, 3,093 will receive over 65% of the maximum amount they could have recovered if they had prevailed at trial, minus taxes and attorneys' fees. Pls.' Mem. at 5; Fox Decl. ¶ 10. The rest will receive a minimum recovery of $250. Pls.' Mem. at 5. And the class members will receive impartial treatment; each will recover his or her proportionate share from the Net Settlement Amount to compensate for unpaid overtime based on an analysis of class members' work records. Id. at 5–6, 12; Fox Decl. ¶ 10.

As noted, in deciding whether to approve a settlement, the Court takes into consideration the recommendation of class counsel. See Dauphin, 90 Fed. Cl. at 102–03. Here, class counsel is of the view that the settlement is fair and reasonable and within acceptable parameters. Hamilton Decl. ¶ 12. The Court has confidence in class counsel's expertise and judgment and finds that class counsel competently represented the class throughout this litigation. Counsel's recommendation that the settlement be approved is therefore entitled to some deference. Sabo, 102 Fed. Cl. at 628.

The Court also finds it significant that of the more than 3,200 class members entitled to payment under the settlement, only three have filed objections to the agreement. This strongly suggests that the vast majority of the class members are satisfied with the terms of the Settlement Agreement. See id., at 629 (observing that "[w]hen only a small number of class members object to a proposed settlement, the Court should consider that as evidence weighing in favor of approving the settlement").

In short, the Court finds that the terms of the settlement are fair, reasonable, and adequate. It turns now to the specific objections filed by the three class members and then to class counsel's request for an award of attorneys' fees and expenses, as well as case contribution awards to the class representatives.

### C. Objections

#### 1. Houle Objection

As noted, only three class members have objected to the terms of the settlement. The first objection was filed by Katherine Houle, who called into the fairness hearing. Ms. Houle, a PA who is now employed in the VA's Compensation and Pension Department, objected to the calculation of her overtime recovery because it did not include the many hours of overtime she spent working in systems other than CPRS, such as the CAPRI system that is used by VA employees working in the Compensation and Pension Department. Houle Obj. at 2–3.[4]

Ms. Houle's objection is not well taken because this lawsuit does not encompass claims for overtime pay based on hours worked in systems other than CPRS. The class that the Court certified on June 7, 2018, consisted of APRNs and PAs "who have performed, are performing, or will perform compensable patient care and clinical duties managing View Alerts and electronic

---

[4] The Court refers to the pagination used by its electronic filing system when citing to class members' written objections.

7

patient health records <u>in the VA's Computerized Patient Records System</u>." Op. and Order at 4 (certifying class), ECF No. 138 (emphasis added); <u>see also</u> ECF Nos. 149-1 (notice to APRNs), 149-2 (notice to PAs), 149-3 (notice to both); App. to Pls.' Resp. to Objs. at A3–A5 (Ex. 1, Consent to Join Class Action Lawsuit of Katherine Houle), ECF No. 257-1 (certifying acknowledgement that suit is about overtime for work managing view alerts and electronic patient records in the CPRS system). As counsel for both parties acknowledged during the fairness hearing, if Ms. Houle wishes to pursue claims for overtime worked in other computer systems, she may do so by filing a separate lawsuit. Her objection to the Settlement Agreement therefore lacks merit.

        **2.**      **Stenseth Objection**

Another class member, Christopher Stenseth, filed an objection contesting the estimate of his share of the Gross Settlement Fund as reflected on the settlement website and Attachment A.[5] <u>See</u> Stenseth Obj. at 2. Mr. Stenseth is a part-time employee who worked thirty-six hours a week on a compressed schedule. Pls.' Resp. to Objs. at 3, ECF No. 257. He asserts that the estimate did not accurately represent all of the many hours of overtime he has worked. Stenseth Obj. at 2.

In responding to the objection, class counsel acknowledged the inaccuracy of the estimate Mr. Stenseth was provided. Pls.' Resp. to Objs. at 6–8. And Mr. Stenseth's objection led class counsel to also examine the estimates provided to the other forty-four class members who were part-time employees working on compressed schedules (hereinafter "the Stenseth Members"). <u>See</u> Pls.' Resp. to Oct. 14, 2021 Order at 1–2, ECF No. 262.

Class counsel asked Plaintiffs' damages expert to recalculate estimates for the Stenseth Members based on class counsel's interpretation at the time of VA Handbook 5011, Part II (Hours of Duty), Chapter 3, § (6)(c)(13)(b). <u>See</u> Pls.' Resp. to Objs. at 7–8. Specifically, class counsel instructed the expert that the Stenseth Members would be entitled to overtime only if they worked more than forty hours in a week. <u>Id.</u> at 7. For example, Mr. Stenseth "often worked more than his assigned 36-hour basic workweek," but under class counsel's interpretation he would not be entitled to overtime pay for hours thirty-seven through forty. <u>Id.</u> at 4. The damages expert applied these instructions and concluded that twenty-two class members (including Mr. Stenseth) had been shortchanged about $90,000 in back pay and interest collectively. <u>Id.</u> at 7–8.

At the fairness hearing, however, class counsel explained that they had learned since filing their response to Mr. Stenseth's objection that the VA had a different interpretation of the Handbook. <u>See</u> Fairness Hr'g at 34:35–36:25. The VA is of the view that Mr. Stenseth is entitled to overtime pay for any work he performed in a day in excess of his nine-hour daily tour of duty, even if he did not work more than forty hours during the same week. <u>See id.</u> at 42:38–42:56.

---

[5] In paragraph 10 of each notice of class action settlement approved by the Court, <u>see</u> Preliminary Approval Order at 3–5, and supplied to the class members, they were advised that they would be able to access an estimate of their individual recovery through a link to a portal on the settlement website. <u>See</u> App. to Pls.' Mem. of Law in Supp. of Mot. for Preliminary Approval of Settlement Agreement and Approval of Notices of Class Action Settlement at A19–42 (Exs. 3(a)–(c), Proposed Notices of Class Action Settlement), ECF 245-1.; <u>see also</u> Attach. A.

Under the VA's interpretation, in other words, Mr. Stenseth would receive overtime for hours thirty-seven through forty. Id.

The Court can readily understand why class counsel would have interpreted the Handbook as they did, as the pertinent language is confusing.[6] Nonetheless, the Court credits the VA's interpretation of its own Handbook and agrees that the Stenseth Members are also entitled to receive overtime pay as provided in the Handbook for work performed in excess of their ordinary tours of duty.

As class counsel has acknowledged—to correct these errors—the Stenseth Members' shares will need to be adjusted upward from the estimates they were provided on the settlement website and that were reflected in Attachment A. See Fairness Hr'g at 38:48–39:54; Pls.' Resp. to Oct. 14, 2021 Order at 1–2; see also Attach. A. Class counsel advised the Court that the total additional dollar amount that will have to be reallocated to the Stenseth Members within the Gross Settlement Fund of $160,000,000 is $203,179.17. Pls.' Resp. to Oct. 14, 2021 Order at 1.[7]

### 3. Calhoun Objection

Theresa Calhoun, an APRN who works at a VA facility in Decatur, Georgia, objects to class counsel's request for 30% of the settlement fund and argues that the Court should instead award counsel fees based on their lodestar. Pls.' Resp. to Objs. at 8; Calhoun Obj. at 2, 5. In addition, she challenges the $20,000 incentive payments that are provided for the class representatives in the settlement. Calhoun Obj. at 3–4; Pls.' Resp. to Objs. at 12. The Court addresses these objections below, in its discussion of class counsel's motion for an award of attorneys' fees and expenses, as well as case contribution awards for the class representatives.[8]

---

[6] The relevant language in the VA Handbook provides as follows for part-time employees working compressed schedules:

> [O]vertime hours are those hours of work performed in excess of the basic work requirement for a scheduled period of service day (but must be in excess of 8 consecutive hours) or for a week (but must be in excess of 40 hours), or in excess of 80 hours in the pay period.

VA Handbook 5011, Part II (Hours of Duty), Chapter 3, § (6)(c)(13)(b).

[7] The reallocation will result in a downward adjustment of 0.128% in the payments made to the other class members (except those receiving the minimum of $250). Pls.' Resp. to Oct. 14, 2021 Order at 2; see also Revised Attach. A to the Settlement Agreement ("Revised Attachment A"), ECF No. 261. That de minimis reduction will be more than made up by the reduction in the attorneys' fees requested by class counsel, as discussed below, and the corresponding increase in the Net Settlement Amount.

[8] In her objection, Ms. Calhoun also expresses concern that premium pay for overtime that was performed on weekends or holidays is not included in the settlement calculus. Calhoun Obj. at 2. But class counsel reasonably concluded that Plaintiffs would not be able to marshal sufficient

9

### III. Motion for an Award of Attorneys' Fees and Expenses, and Case Contribution Awards for Class Representatives

#### A. Case Contribution Awards

Class counsel has filed a motion for approval of $20,000 case contribution awards to each of the class representatives. See Mot. for Att'ys' Fees. As noted, Ms. Calhoun filed an objection to that aspect of the settlement. See Calhoun Obj. at 3–4. She objects to awards being given to the named plaintiffs but not to other class members like herself who also contributed to the litigation and provided information to counsel. Id. The Court finds that Ms. Calhoun's objection is not well taken and agrees that the requested $20,000 awards for the class representatives are reasonable.

Case contribution awards recognize the unique risks incurred and additional responsibility undertaken by named plaintiffs in class actions. See Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (explaining that representative payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation"); see also Ingram v. Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding payments of $300,000 to each class representative); Pinto v. Princess Cruise Lines, Ltd., 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 awards to three representative plaintiffs); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250–51 (S.D. Ohio 1991) (awarding $50,000 to each of six class representatives, for an aggregate award of $300,000); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (granting two incentive awards of $55,000 and three incentive awards of $35,000); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 33 (E.D. Pa. 1985) (granting incentive awards of $20,000 to each of two class representatives).

In this case, the class representatives for the APRNs were Stephanie Mercier, Audricia Brooks, Deborah Plageman, and Jennifer Allred. They originally retained counsel and had lengthy meetings and teleconferences with them before the complaint was filed. App. to Pls.' Mem. of Law in Support of Class Counsel's Mot. for an Award of Att'ys' Fees, Costs, and Expenses, and Case Contribution Award to Class Representatives ("Pls.' Fees Mem.") at A3–A11 (Ex.1, Decl. of Class Representatives) ¶¶ 4–5, ECF No. 252-1. Michele Gavin then entered the suit as a class representative for PAs, and later Stephen Doyle agreed to serve as class representative for a subclass of APRNs and PAs from nine other VA facilities. Id. ¶¶ 6–7. Both of them also had extensive discussions with counsel regarding the case in its earliest stages. Id.

Further, all of the class representatives consulted regularly with counsel throughout the litigation and were actively involved in all material aspects of the lawsuit. Id. ¶ 9. They "received periodic updates from counsel on case developments, discussed with them the strengths and weaknesses of [the] case and weighed the pros and cons of a potential settlement." Id. They were

---

evidence to show that class members were induced to perform any overtime work at a particular time or particular day of the week. See Pls.' Resp. to Objs. at 8–11. It was also reasonable for class counsel to make a strategic decision that including premium pay in the calculus would add a layer of complexity to the formula that could not be justified. See id. at 10–11.

served with and responded to the government's discovery requests. Decl. of Class Representatives ¶ 10. The six class representatives prepared for and participated in twelve depositions among them, each of which lasted several hours. Id. ¶ 11. They also participated in the mediation of the case. Id. ¶ 12.

Finally, it bears noting that it takes courage to be the public face of litigation against one's employer. Thus, while the Court has no reason to doubt that many class members, including Ms. Calhoun, provided information and assistance to class counsel, the contributions of the named representatives and the risks they bore were unique ones, and the Court finds that the recommended incentive awards of $20,000 each are reasonable, especially given the size of the settlement.

### B. Attorneys' Fees

#### 1. An Award of Reasonable Attorney Fees and Expenses is Available Under the Common Fund Doctrine

RCFC 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Here, Plaintiffs base their fee request on the common fund doctrine. See Pls.' Fees Mem. passim, ECF No. 252. Under that doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney fees from the fund as a whole." Haggart, 809 F.3d at 1352 (alterations omitted) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)); see also Kane Cnty. v. United States, 145 Fed. Cl. 15, 17–20 (2019).

The Supreme Court has held that the criteria for the application of the common fund doctrine "are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." Boeing Co., 444 U.S. at 479. In this case, the lump-sum amount awarded to the class is $160,000,000. Settlement Agreement ¶ 9. Each plaintiff in this case is entitled to a proportionate and ascertainable share of the final Net Settlement Amount. See Revised Attach. A to the Settlement Agreement ("Revised Attachment A"), ECF No. 261, (specifying each class member's recovery based on the estimated Net Settlement Amount). Therefore, a common fund exists in this case.

"[T]he question of whether a common fund has been created," however, "is distinct from whether the doctrine may be applied to allow class counsel or the prevailing litigant to recover attorney fees." Haggart, 809 F.3d at 1352. "Recovery of attorney fees under a common fund is based on the existence of some inequity borne by counsel or the successful litigant." Id. Such inequity exists where, in a class action under RCFC 23, some opt-in plaintiffs are not contractually obligated to contribute to the costs of the litigation because they have not entered separate fee agreements with class counsel. Id. at 1354.

In this case, each of the six named plaintiffs had a retainer agreement with class counsel that provided for a contingency fee of up to 33.3% of their recovery, but counsel did not have fee

agreements with any of the other class members. Pls.' Fees Mem. at 10; Hamilton Decl. ¶ 15. Therefore, it is appropriate to direct an award of attorneys' fees and expenses based on the common fund doctrine so that the other class members pay their fair share of the costs of class counsel's advocacy on their behalf.

### 2. Reasonableness of Plaintiffs' Fee Request

Class counsel requests an award of $48,000,000 in attorneys' fees, which represents 30% of the $160,000,000 common fund the settlement creates. Mot. for Att'ys' Fees at 1. Counsel contends that a 30% share of the common fund is within the range of percentages that have been approved as the basis of attorney fee awards in similar cases. See Pls.' Fees Mem. at 1, 11–12.

But none of the cases from this court that class counsel cites in support of their motion for attorneys' fees involves common funds anywhere near as large as the one created in this case.[9] See id. While the Court agrees that counsel provided excellent representation to the class, it concludes that it would not be reasonable to award a fee equal to 30% of the common fund, i.e., $48,000,000. Instead, for the reasons that follow, it approves an award of attorneys' fees equal to 20% of the common fund, i.e., $32,000,000.

The Federal Circuit has held that, in common fund cases, reasonable attorney fees may be calculated using either the percentage or the lodestar method. See Haggart, 809 F.3d at 1355. The lodestar method "'was designed to govern imposition of fees on the losing party,' not the distribution of fees from victorious plaintiffs to their attorney." Health Republic Ins. Co. v. United States, No. 16-CV-259C, 2021 WL 4233966, at *5 (Fed. Cl. Sept. 16, 2021) (quoting Gisbrecht v. Barnhart, 535 U.S. 789, 806 (2002)). It has therefore "been identified as a poor fit for common fund cases." Id. at *6.

The percentage method is the best fit for class action overtime cases like the present one. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (stating that the percentage-of-the-fund is "favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotation marks omitted); Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[A] percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

---

[9] See Moore v. United States, 63 Fed. Cl. 781, 786 (2005) (approximately $5,000,000 common fund); Raulerson v. United States, 108 Fed. Cl. 675, 677 (2013) (approximately $33,000,000 common fund); Kane Cnty., 145 Fed. Cl. at 18 (approximately $17,000,000 common fund); Lambert v. United States, 124 Fed. Cl. 675, 677 (2015) (approximately $3,600,000 common fund); Quimby v. United States, 107 Fed. Cl. 126, 129 (2012) (approximately $74,000,000 common fund); DeMons v. United States, 131 Fed. Cl. 514, 515 (2017) (approximately $6,600,000 common fund); Adams v. United States, 107 Fed. Cl. 74, 75 (2012) (approximately $5,000,000 common fund); Voth Oil Co. v. United States, 108 Fed. Cl. 98, 103 (2012) (approximately $1,300,000 common fund); Russell v. United States, 132 Fed. Cl. 361, 362 (2017) ($4,000,000 common fund).

The Federal Circuit has not specified what considerations govern the assessment of the reasonableness of fee requests in common fund cases. A number of judges on this court, however, have used a multi-factor test to make that determination, under which the Court considers: (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award. Moore v. United States, 63 Fed. Cl. 781, 787 (2005) (citing Manual for Complex Litig. § 14.121 (4th ed. 2004)); see also Kane Cnty., 145 Fed. Cl. at 18; Lambert v. United States, 124 Fed. Cl. 675, 683 (2015); Raulerson v. United States, 108 Fed. Cl. 675, 679–80 (2013); Quimby v. United States, 107 Fed. Cl. 126, 133 (2012).

Beginning with the quality-of-counsel factor, as described above, class counsel has extensive experience litigating class actions generally, including those involving overtime pay. See Hamilton Decl. ¶¶ 2, 8. They vigorously prosecuted this case over a span of almost nine years and have achieved an excellent result for the class in the face of an equally vigorous defense mounted by the Department of Justice. Further, once this settlement is approved, class counsel will have to oversee its administration, which will require the devotion of additional time and resources.

In addition, as is generally the case with class actions, the litigation was complex, and the risk of non-recovery in this case was substantial. Indeed, this Court initially dismissed the case for failure to state a claim. Op. and Order at 13, ECF No. 24. Counsel then had to persuade the Court of Appeals that employees' entitlement to overtime pay under Title 38 is not dependent on their receiving an express order to work such overtime, as is the case under Title 5. See Mercier II, 786 F.3d at 982. Even having accomplished that result, had this case gone to trial, counsel would have had to convince this Court that the nationwide class of health professionals had been induced by some uniform VA practice or policy to put in extra work after hours. There is little if any recent case law on proving "inducement" to work overtime. And because the work was done outside of the employees' tours of duty, proof of the amount of work done would necessarily have been based on evidence other than payroll records, adding another element of uncertainty to Plaintiffs' chances of success.

Moreover, it was not a foregone conclusion that the Court would grant Plaintiffs' motion for class certification, which the government opposed. See Def.'s Opp'n to Pls.' Mot. to Certify Class, ECF No. 132. Once the class was certified, counsel was required to engage in a second round of discovery on the merits. Counsel achieved an excellent result in mediation, through which the government agreed to pay 65% of the total amount of pay that Plaintiffs' damages expert found the class members were due, subject to reduction for attorneys' fees and expenses. See Pls.' Mem. at 5; Fox Decl. ¶¶ 4, 10.

On the other hand, the Court does not agree that the willingness of the named plaintiffs to agree to a 33.3% contingency fee is entitled to much weight in deciding whether a fee award of 30% of the common fund is reasonable. There were thousands of class members in this case and only the named members entered fee agreements. See Hamilton Decl. ¶ 15; Moore, 63 Fed. Cl. at 787 (disagreeing with the proposition "that the fee arrangement with named plaintiffs creates a

13

presumption of reasonableness"). Even if some other class members had agreed to a 33.3% contingency fee, they almost certainly would have evaluated the fee's reasonableness in terms of their own recoveries, overlooking the economies of scale that class counsel enjoyed by representing thousands of similarly situated plaintiffs. And they could not have predicted the size of the recovery upon which counsel's percentage fee would be based.

In that regard, the Court agrees that this monetary settlement is amongst the largest that has been reached in an overtime case involving federal employees. See Pls.' Fees Mem. at 1, 13. But it is in part because of the large size of the common fund that the Court has concluded that it would not be reasonable to award attorneys' fees equivalent to 30% of that fund. While a fee of 30% may be appropriate in many if not most overtime cases, this case involves an enormous common fund—large enough that in some circuits it would be classified as a "megafund." See Manual for Complex Litig. § 14.121 (4th ed. 2004) (in class actions with recoveries exceeding $100,000,000, courts have reduced fee percentages that are otherwise in the 20%–30% average range down to a range between 4.1% and 17.92% (citing In re Prudential Ins. of Am. Sales Prac. Litig., 148 F.3d 283, 339–40 (3d Cir. 1998))).

In the Court's view, it would be reasonable to award attorneys' fees equal to 20% of the common fund. The fees class counsel requests are approximately 4.4 times the estimated lodestar amount ($10,831,372). See Pls.' Fees Mem. at 14. A 20% award, on the other hand, would yield $32,000,000 in fees, which is approximately 2.95 times the lodestar amount, a very generous but reasonable recovery. That significant award reflects the outstanding work of class counsel in this case, the length of the case, and the risk to counsel of recovering nothing despite investing substantial time, effort, and money. See Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (approving a lodestar multiplier of 2.28 and observing that in the court's opinion "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases"); Cunningham v. Suds Pizza, Inc., 290 F. Supp. 3d 214, 232 (W.D.N.Y. 2017) (approving percentage recovery in FLSA case that would yield lodestar multiplier of 2.84).

An award of 30%, on the other hand, yields a windfall to counsel, is not necessary to attract competent counsel to similar cases, and would necessarily be at the expense of the class members. The Court recognizes that only one of the class members (Theresa Calhoun) lodged objections concerning the requested attorney fee award, and she did so to urge the Court to base the award on the lodestar, not a percentage of the fund. See Calhoun Obj. at 2–3, 5. Ms. Calhoun argued that an award of 30% of the common fund is "usually reserved as an award/incentive for counsel when settling cases [in less than five years] where time would not have permitted them to build up hourly fees." Id. at 3.

Ms. Calhoun's objection is not well taken. Whether the lodestar or percentage approach is used does not depend on the length of time it takes for a case to be completed. And counsel should not be penalized for the protracted nature of the litigation where—as here—they were not at fault for the delays.[10]

---

[10] As class counsel points out in their response to Ms. Calhoun's objections, the first two and one-half years of this litigation were consumed by the government's motion to dismiss and

14

But the fact that there was virtually no objection to the percentage of the common fund that class counsel requests does not mean that the Court should rubber-stamp it. In a class action, this Court acts as a "fiduciary for the class." In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994 (9th Cir. 2010). As a fiduciary, it must "act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is." Id. (internal quotation marks omitted) (quoting In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994)); see also 4 William B. Rubenstein, Newberg on Class Actions § 13:40 (5th ed. 2012); Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328–29 (9th Cir. 1999) (explaining that the court's duty to ensure that attorneys' fees awarded in a class action are reasonable "exists independently of any objection" from a member of the class). Moreover, as the Second Circuit has observed, the Court's fiduciary role is especially important in the context of fixing reasonable attorneys' fees "because the adversary system is typically diluted—indeed, suspended—during fee proceedings," as "[d]efendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 52 (2d Cir. 2000).

In the Court's view as fiduciary for the class, an award of attorneys' fees that is equal to 20% rather than 30% of the Gross Settlement Fund, or $32,000,000, not only protects the interests of the class members but also provides ample compensation to counsel for their excellent work in this case. Further, the award is large enough to encourage other counsel to take on the representation of plaintiffs in similar cases. The Court therefore will approve an award of $32,000,000 and not $48,000,000 for attorneys' fees.

### C.    Out-of-Pocket Expenses

It is well settled that counsel who have created a common fund for the benefit of a class are entitled to be awarded for out-of-pocket costs reasonably incurred in creating the fund. See, e.g., Kane Cnty., 145 Fed. Cl. at 20. In this case, class counsel seeks reimbursement of $463,544.33 in litigation expenses. Pls.' Fees Mem. at 15. Most of these expenses were for hiring expert witnesses, deposition costs, travel-related expenses, and the opt-in notice. Id. As detailed in class counsel's declarations in support of their motion for attorneys' fees and expenses, each expense was actually incurred, and was both reasonable and necessary to prosecute this action. See Hamilton Decl. ¶ 17; App. to Pls.' Fees Mem. at A119–A125 (Ex. 4, Decl. of Bennett Allen) ¶ 9; id. at A139–159 (Ex. 7, Decl. of William Narwold) ¶ 13–14; id. at A126–132 (Ex. 5, Decl. of Douglas Richards) ¶ 8; id. at A133–138 (Ex. 6, Decl. of Robert Stropp) ¶ 9–10. The Court therefore **GRANTS** Plaintiffs' request for an award of non-taxable costs and expenses in full.

---

Plaintiffs' successful appeal. Pls.' Resp. to Objs. at 11. The government then unsuccessfully opposed class certification which—along with proving class notice—ate up another few years. Id. The parties then engaged in merits discovery starting in 2019. Id. There were numerous delays occasioned by the government's failure to timely produce documents. Id. at 12. Throughout it all, counsel for the Plaintiffs vigorously challenged the delayed production.

## CONCLUSION

In view of the foregoing, the Court finds that the parties' proposed settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs' motion for final approval of the Settlement Agreement, ECF No. 249, is **GRANTED**. Further, class counsel's motion for an award of attorneys' fees, costs, and expenses, and for case contribution awards, ECF No. 251, is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court **ORDERS** that the following amounts be paid from the Gross Settlement Fund, in accordance with this Order and the Settlement Agreement: $32,000,000 in attorneys' fees, $463,544.33 in expenses, $265,000 in administrative costs, and $120,000 in case contribution awards.

Consistent with paragraph 21 of the Settlement Agreement, "[u]pon satisfaction of the terms set forth in paragraph 11," Plaintiffs and the United States shall file a stipulation of dismissal of this lawsuit with prejudice pursuant to Rule 41 of the Rules of the United States Court of Federal Claims. Within 45 days of this Order, unless a stipulation of dismissal has already been filed, the parties shall file a joint status report advising the Court regarding the status of the government's compliance with paragraph 11.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge